DURR *v.* HOMOCHITTO LUMBER CO.*

(Division B. Dec. 22, 1924. Suggestion of Error overruled Jan. 12, 1925.)

[102 So. 257.     No. 24275.]

1. MASTER AND SERVANT. *Instruction on assumption of risk not incorporating hypothesis plaintiff was conductor voluntarily operating cars, held erroneous.*

In a suit for damages for personal injury to an employee, based upon a failure of the defendant to furnish a safe place to work for the plaintiff, where there is a dispute in the evidence as to whether the plaintiff was a switchman or whether he was in charge of the cars as conductor, voluntarily operating them, it is error to give instructions for the defendant to the effect that the plaintiff cannot recover if he is cognizant of and appreciated the danger of going over said cars, without incorporating therein the hypothesis that he was the conductor of the train, voluntarily operating said cars.

2. MASTER AND SERVANT. *Risk assumed by employee under statute where employer is negligent stated.*

Under section 504, Hemingway's Code (chapter 156, Laws of 1914), an employee of a sawmill corporation operating a logging road, does not assume the risk of his employment if the defendant is negligent, unless he was a conductor or engineer in charge of dangerous and unsafe cars or engines, and voluntarily operated them.

*Headnotes 1. Master and Servant, 26 Cyc., p. 1503; 2. Master and Servant, 26 Cyc., p. 1225.

Appeal from circuit court of Franklin county.

Hon. R. L. Corban, Judge.

Action by J. L. Durr against the Homochitto Lumber Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded for new trial.

*J. W. Cassidy* and *Green, Green & Potter,* for appellant.

Throughout the instructions for the defendant the jury are told that if the plaintiff walked on the sill of the skeleton cars in the performance of his duties, and it was not necessary for him to walk on such sills in the performance of his duties that they must find for the defendant. These instructions are in clear conflict with the instructions sought and obtained by the plaintiff. Under plaintiff's instructions the jury were told that if the plaintiff in doing his work was allowed and permitted to walk over the skeleton cars in the performance of his duties, then he had a right to assume that he was doing his work in the manner required of him. We submit that this instruction on the behalf of the defendant was fatally erroneous. The uncontradicted evidence shows that during all the time that the plaintiff was working for the defendant company, through a number of years, that he had performed his work by walking over the train in exactly the same manner as on the day he was injured. The appellant's agents who had the right to direct and control the plaintiff's services, admitted that they knew that plaintiff performed his work, as a switchman by walking over the skeleton cars. The witnesses for the defendant testified that practically all the servants of the defendant, engaged in the same sort of labor were in the habit of walking over the skeleton cars while in motion in the performance of their duties. And we submit that whether it was absolutely necessary for him to walk on moving cars in the performance of his duties or not, he had a right to do so because with the

knowledge and acquiescence of his superiors, the work during many years had been performed in exactly that way.

Under the provisions of chapter 106, Laws of 1914, section 504, Hemingway's Code, if the master is guilty of any negligence the servant will not be held to have assumed the risk. It was therefore, error to make the sole issue in the case the question whether or not it was necessary for the plaintiff to walk over the moving cars. Under the instructions if it was not necessary for the plaintiff to walk over the moving cars, if it were physically possible to do his work in another way, the jury were instructed that they should find for the defendant, notwithstanding the fact that this method of doing the work was acquiesced in by the defendant company. The jury were instructed that if it were not necessary to do the work in this way that they would find for the defendant. It is fundamental that a master owes to his servant the non-delegable duty to furnish him with a reasonably safe place to work and must use ordinary care such as a man of ordinary prudence employs to furnish his servants or employees with material, tools and appliances suitable for the performance of the services required of them. *Howard* v. *Miss., etc., R. R. Co.,* 50 Miss. 178; *White* v. *L. & N. R. R. Co.,* 72 Miss. 12, 16 So. 248; *Hope* v. *Natchez, etc., R. R. Co.,* 54 So. 369; *Miss. Central R. R. Co.* v. *Hardy,* 88 Miss. 732, 41 So. 505; *A. & V. R. R. Co.* v. *Groome,* 52 So. 703; *Southern R. R. Co.* v. *Wiley,* 88 Miss. 25; *Southern R. R. Co.* v. *McLellan,* 80 Miss. 700, 32 So. 383. And the general rule with reference to the duty of the master to furnish the servants with a reasonably safe place within which to work applies to railroads used as logging railroads as well as to commercial railroads. *Lynn* v. *Antrim Lbr. Co.,* 29 So. 874.

The sixth instruction given the defendant was erroneous in that in effect it told the jury that if the plaintiff was negligent and his negligence contributed to his injury that he could not recover. This instruction is in

direct conflict with chapter 135, Laws of 1910, which
provides that contributory negligence shall not be a de-
fense at bar, but that such negligence shall only be used
to diminish the damages to which the plaintiff would
otherwise be entitled.  Section 193, Constitution 1890,
does not apply.  It is well settled that the provisions of
section 193, Constitution 1890, apply only to commercial
railroads and do not apply to logging railroads. *Bradford
Construction Co.* v. *Heflin,* 88 Miss. 314; *Givens* v. *South-
ern Railroad Co.,* 94 Miss. 830, 49 So. 180.

*L. A. Whittington,* for appellee.

.We submit to the court that plaintiff rested his case
in the court below upon the allegation that it was the
duty of defendant to furnish him a safe place to work;
that his work required him to go upon and walk over
moving skeleton cars that were ·wholly dangerous,
being run over a road that was uneven and in bad con-
dition; that they were dangerous and unsafe and be-
cause of their dangerous and unsafe character and be-
cause of the negligence of defendant in not making
them safe for him, he was entitled to recover for in-
juries sustained as he alleges.  We contend that relying
upon this charge of negligence against defendant, it
was necessary before plaintiff could recover to show
that plaintiff, at the time he was injured was required,
in the proper performance of his duties to walk on the
cars while in motion.  It is admitted by plaintiff and
not denied by the defendant, that these cars were not
made to walk over with safety while in motion; it is
admitted that they might be walked over with safety
while at rest.  Was plaintiff in the proper performance
of his duty while walking over these cars in motion?
We submit that his own evidence denies that proposition.

And touching the second contention made that a sill
of the car upon which he was working had become de-
fective by being splintered so that when he stepped

upon it his foot slipped, and that because of this defective condition the car was an unsafe place for him to walk upon in the performance of his duties. We, again, urge that to support this ground and theory advanced by plaintiff it became wholly necessary for him to establish that his duty and the performance of his duty, at the time he was injured, required that he walk upon this defective car while in motion; as we have shown above this may not be insisted by plaintiff in face of the undisputed evidence and his own evidence that his duty required that he keep a lookout to protect the train while in motion. Being on this defective car and walking on same while in motion, was in flagrant violation of the positive duty the plaintiff owed to the defendant for the protection of its property, to himself for his own protection and to the engineer and fireman for their protection.

And again with reference to the alleged bad condition of the track, we submit that plaintiff may not predicate a claim of negligence in the performance of a duty then and there owed to him respecting the condition of the track, so as to make same free from causing the cars to wobble or sway while he was walking on the cars in the necessary or proper performance of his duties, unless he can establish that it was necessary or required of him to walk on the cars being run on said defective track and thereby caused to wobble or sway with him while so walking, in the proper performance of his duty, and that too, at the time he was injured.

We submit to the court that in any view of the case alleged against defendant by the plaintiff, the question that is vital and uppermost on and in every issue presented or contention made, is: Was plaintiff at the time he was injured in the performance of his duty, and was it necessary or required that in the performance of that duty that he walk over these dangerous and unsafe and defective cars running on a defective track— admitting all for the sake of argument—while in motion

and while being operated? We insist that in the face of the record in this case, there can be but one conclusion reached and that was reached by the jury, that he was not required and that it was not necessary for him to walk over these cars while in motion at the time he was injured; but that on the contrary he was manifestly violating the plain, positive and well appreciated duty then resisting upon him to be seated on said cars at or near the rear of the train, there engaged in maintaining a proper lookout to properly protect the train from whatsoever obstruction on the track there might be, as well as safeguard his own life and that of the fireman and engineer.

The plaintiff and his counsel recognize the reasonableness as well as the force of the argument here presented, and to answer same it is admitted that the above contention made by the defendant would be properly sustained were it not for the further fact that the evidence shows that there was a custom among the employees of the defendant to "walk on the cars while in motion;" a custom to perform the duty devolving upon plaintiff on the morning in question in the manner and as he performed it, which custom was known to the defendant. We admit that the record discloses that the employees of the defendant, the different foremen, had seen men walking on the cars in motion; but we deny that the record discloses that defendant was aware or knew of the failure of the plaintiff, or other such employees to fully discharge their duties in protecting the train by keeping the lookout when backing out into the woods; and we further deny that the record shows by the evidence of a single witness that it was necessary or required in the performance of any duty, for the employees to ride on or rather walk on said cars while in motion.

But, we submit to the court, that there is another reason why this rule may not be invoked in this case by plaintiff, and that is, the claim of plaintiff that he was

accustomed to walk over the moving cars after the train
had started to his proper place, where he was required
to be, which reason is tantamount to asserting that he
was exempted, in following a custom established by him-
self, from the operation of the principle of law that
requires an employee to exercise ordinary care and
caution to prevent injury being done himself.    This
principle of law is recognized and may not be ignored in
this case.

We submit to the court that plaintiff, at the time he was
injured was a conductor, within the meaning of Section
504, Hemingway's Code. Plaintiff, admitting the force of
the facts, adduced in this case establishing his posi-
tion as conductor, answering says that section 193 of the
Constitution does not apply to a logging railroad.    This
we admit is the holding of this court and we concede the
correctness thereof; but, we assert that section 504 of the
Code applies; not section 193 of the Constitution. Sec-
tion 193 plainly provides that the remedies therein
provided for may be extended by the legislature to
other classes of the employees, meaning thereby, to
other employees operating other cars or engines other
than those operated by commercial railroads.    This is
exactly the power we conceive the legislature of the
state has exercised by enacting section 504, and that,
therefore, section 504, applies to all engineers and con-
ductors whether operating on a commercial railroad or
not, and that by the terms of said section 504, plaintiff
was a conductor within the meaning of same and there-
fore could not be heard to complain of any dangerous
or unsafe cars voluntarily operated by him.

*J. W. Cassidy* and *Green, Green & Potter,* in reply for
appellant.

We submit that under this statement of facts, the
granting of the several instructions for the defendant
which involved the idea that unless the jury believed

from the evidence that the proper performance of plaintiff's duties required him to be at the place where he was injured; or it was necessary for him to walk over the train while in motion, that they should find for the defendant, was fatally erroneous for the following reasons, to-wit: (a)  Because it is not only necessary for an employer to provide his servants with safe appliances and places, but also, to see that such safe appliances and places are not used in a dangerous manner.  (b) Because the instructions complained of do not take cognizance of the fact that the company ought to have made and enforced rules to prevent their employees from being in this dangerous situation.   (c) Because these several instructions all together leave out of consideration of the jury the issue that the work was performed in a customary manner with full knowledge and with acquiescence of the defendant.   (d) Because the several instructions complained of are of a character to conflict with the first instruction for plaintiff.   3 Labat on Master and Servants (2 Ed.), p 2920;  *Smith* v. *Baker,* decided by the House of Lords, reported in 1891, Appeal Cases, 325-357;   Sherwood and Redfield in their work on Negligence; Labat (2 Ed.), 2992;  *Wright* v. *Southern Pacific,* 14 Utah 383,  46 Pac. 374; *Texas & Pacific R. R. Co.* v. *Leights* (Tex.), 32 S. W. 799.

We take it that there can be no doubt that an instruction which excludes or ignores one of the vital issues in a case renders void and erroneous the whole.  *Hursey* v. *Hassam,* 45 Miss. 133;   *Nichols* v. *State,* 46 Miss. 284; *Levy* v. *Gray,* 56 Miss. 318;   *Lackey* v. *R. R. Co.,* 102 Miss. 339, 59 So. 97;  *Harrison* v. *Garner,* 110 Miss. 586, 70 So. 700;   *Chapman* v. *Copeland,* 55 Miss. 476.

Argued orally by *Chalmers Potter* for appellant, and *L. A. Whittington* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was plaintiff below and brought suit for personal injuries, charging in his declaration: That

he was a switchman on one of defendant's log trains, and that it was his duty to couple cars to the engine, and that the engine would back over the log roads pushing the cars in front of it on occasions. That is was his duty to couple the cars, and to go over the cars when they were being pushed in front of the engine to the forward part of the train, where he could observe and give the necessary signals for the protection of the crew and of persons and property on the track. That the defendant owed him the duty to furnish him with a reasonably safe place to work, and that he failed to do so, in that the cars furnished him were skeleton cars provided with only two sills five inches in width and fourteen inches apart for him to walk over, and that the defendant knew that such cars were not reasonably safe, and that without impairing the efficiency of the cars for the purpose for which they were intended a twenty-four inch floor could be put in the center of the cars at a small cost which would render these skeleton cars safer. That the plaintiff reported to the defendant that said cars were of unsafe construction, and the defendant promised plaintiff to remedy the same by putting down floors from sill to sill, but failed to keep such promise.

It is further alleged that the cars were coupled by means of link and pin couplers, which caused an excessive amount of slack between the cars, and that the track was in rough condition, and that said rough track and the link and pin couplers made the cars more dangerous. It is further alleged that on a named day while the plaintiff was in the ordinary discharge of his duties, he coupled the cars next to the engine and started forward between the last car from the engine as same was being pushed along towards the woods, in order that he might take his place on the proper car, and while on his way, on said moving train, and in the discharge of his duties in the customary way, he was caused to fall against an iron rail on one of the cars by reason of the unsafe and

dangerous construction of the said cars, and by reason of the unsafe amount of slack between the cars, and on account of the rough condition of the track.

It is further alleged that one of the sills on one of the cars had become unsafe by a portion of the surface being splintered off so as to make the sill a sharp edged sill less than five inches in width, and that the company had notice of the said dangerous condition of the cars, and of the said defect in the sill which presented a sharp surface, and formed a dangerous and unsafe place for a walk way, and because the train was in motion, and because the plaintiff discovered the dangerous condition of the sill too late to prevent himself from coming in contact with the same, and, on account of the condition of the sill and the negligence of the defendant in allowing it to become and remain in such condition, he lost his balance and was thrown against the said iron rail, and as a proximate result thereof he was severely injured. It is further alleged that the defendant had knowledge of the defective sill and of the defective walk ways, and had promised to repair them but had not done so.

The defendant pleaded the general issue, and set up a special plea alleging that the plaintiff was a conductor in charge of the cars, and that he voluntarily operated the same in his capacity of conductor knowing the unsafe and defective condition of such cars, if such existed. In his replication the plaintiff denied that he was the conductor of the train; denied that he knew that the sill furnished him to walk upon was defective; and alleged that the defendant company had promised and agreed to provide him a floor to walk over, and had promised to repair and fix a walk way over said cars, and that plaintiff did not voluntarily operate a defective and dangerous car.

The testimony on the part of the plaintiff was to the effect that he was a brakeman and not a conductor in charge of the cars; that he was acting under orders of

another who had control of the movement of the cars, and that he testified that the defendant company had promised to fix the floor of the walk way on the said cars and had failed to do so; that he relied on said promise and also testified that other companies for whom he had worked had such walk ways provided on their logging cars. He admitted that on some occasions he had signed as conductor in delivering cars to a railroad which required a conductor to sign the consignment.

The evidence for the defendant was that the plaintiff was the conductor, and had the control and direction and operation of the said cars. It is also in proof for the plaintiff that the car which had the rough surface had been in that condition long enough to be discovered by a reasonable inspection, and that it ought to have been repaired, and that it was dangerous to undertake to walk over this particular car while the cars were in motion, and that the plaintiff was injured by walking thereon, and that he did not know the defective car was in the train until he started to step, and could not then prevent stepping on such defective car after the discovery of the said unsafe and dangerous situation. The plaintiff further testified that it was customary and was his duty to walk over the moving train of cars. The defendant's testimony was to the effect that it was not his duty to walk over the cars, but that he could walk on the ground from the engine up to the place where his duty called him to be to keep a lookout and that it was his own negligence that caused him to walk over the moving train of cars to reach the place or position of service. Defendant also contended that it was against the rules for the plaintiff to walk over the train while in motion. Plaintiff denied knowledge of any such rule of the defendant, or that it had ever been communicated to him.

It will be seen that there was a sharp conflict in the evidence as to whether the plaintiff was a conductor in charge of and operating the said cars, or whether he was a switchman occupying a subordinate place. The instructions for the defendant instructed that if the jury

believe from the evidence that plaintiff, in the proper performance of his duties required of him, was not required and it was not necessary for him to walk over the cars after the train was in motion, and after the train had been started, then it was the duty of the jury to find for the defendant.

In quite a number of the instructions the jury were told that if it was not necessary for the plaintiff, in the performance of his duty, to walk over the cars while the train was in motion, that it was their duty to find for the defendant. In effect the same instructions were given as to the condition of the track; that if the plaintiff was familiar with the condition of the roadbed and any defects therein were such that by the exercise of ordinary care and reasonable prudence a man could have and would have observed and noticed such defects, and would have appreciated the effect of such condition would obviously cause the swaying of the train, and that the plaintiff knew and appreciated the danger in walking on the cars, that such dangers were obvious and patent, and if he knew the cars would be liable to bump together in taking up slack, and that they were unsafe and dangerous to walk upon while the train was in motion, and that the plaintiff undertook to walk upon the train while in motion, then the jury should find for the defendant.

The court further instructed for the defendant, that under the law it was not the duty of the defendant to repair the splintered car or sill of the car which plaintiff alleged he fell upon and was thereby injured, unless the jury believed that the plaintiff in going to the place on the moving train where his duty required him to be, that it became necessary in the proper performance of his duties that he should walk over said defective sill to get to the said point on said train. The court further instructed the jury that if the plaintiff in the proper performance of his duties was not required and it was not necessary for him to walk on the moving train of cars, but that he voluntarily walked over said moving train, then it was the duty of the jury to find for the de-

fendant even though they may further believe that the
defendant neglected to keep said defective car sill re-
paired or to keep its track in reasonable repair.

It will be observed from these instructions that these
instructions did not incorporate as one of the hypotheses
that the jury must believe that the plaintiff was a con-
ductor in charge of the cars, and that he voluntarily op-
erated said train knowing its defective condition. The
instructions proceeded upon the idea that the plaintiff
cannot recover, although the master was negligent, if
the plaintiff voluntarily walked over the moving train.

Section 504, Hemingway's Code (chapter 156, Laws
of 1914), provides:

"In all actions for personal injury to an employee, and
in all actions where such injury results in death, such em-
ployee shall not be held to have assumed the risks of his
employment in any case where such injury or death re-
sults in whole or in part from the negligence of the mas-
ter; except as to conductors, or locomotive engineers, in
charge of dangerous or unsafe cars or engines volun-
tarily operated by them."

There was testimony from which the jury could find
negligence against the defendant, and there was evidence
that it was customary for the plaintiff and others in a
like situation to walk over the cars while in motion and
that the master knew of this practice and custom. There
was also evidence that the master had been expressly
notified of the dangers attending such operation, and had
promised to provide a safer way. In view of these facts
it was error to give these instructions for the defendant
without incorporating the hypothesis that the plaintiff
was the conductor in charge of the train of cars, volun-
tarily operating it, with knowledge of its unsafe condi-
tion, etc.

These instructions were prejudicial and erroneous,
and the judgment of the court below will be reversed,
and the cause remanded to the court below for a new
trial.

*Reversed and remanded.*